IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                     Case No. 21-CR-185-JFH

ANTONIO MAURICE SAMBRANO,

        Defendant.

## OPINION AND ORDER

Before the Court is an Amended Motion for Reduction of Sentence ("Motion") filed by Defendant Antonio Maurice Sambrano. Dkt. No. 66. The United States of America ("Government") has filed a Response opposing Defendant's Motion. Dkt. No. 69. For the following reasons, Defendant's Motion is DENIED.

## BACKGROUND

Defendant was originally charged with four counts of sexually abusing his girlfriend in Indian Country. Dkt. No. 17. He subsequently pled guilty to Counts One and Two of the Indictment by written plea agreement, and the Government dismissed Counts Three and Four. Dkt. No. 43-44, 59. The plea agreement contained the following factual basis for his plea:

> On May 25, 2020, I, Antonio Maurice Sambrano, knowingly and intentionally, penetrated the anus of M.S., an Indian, with my penis, while M.S. was unconscious and therefore incapable of apprising the nature of the conduct and physically incapable of declining participating in and communicating unwillingness to engage in the aforementioned sexual act. Moreover, on June 6, 2020, I, Antonio Maurice Sambrano, knowingly and intentionally, penetrated the vagina of M.S., an Indian, with my penis, while M.S. was unconscious and therefore incapable of apprising the nature of the conduct and physically incapable of declining participating in and communicating unwillingness to engage in the aforementioned sexual act. Both of these acts occurred at the home of M.S. in Seminole, Oklahoma, within the Eastern District of Oklahoma and in the territorial boundaries of the Seminole Nation, Indian Country.

Dkt. No. 43 at 2-3.

During sentencing, the Court adopted the presentence investigation report ("PSR") written by the United States Probation Office. Dkt. No. 54. The PSR calculated the applicable sentencing range under the 2018 Sentencing Guidelines, which calculated Defendant's total offense level as thirty-one. *Id.* at ¶¶ 18-38. Based on having three criminal history points, including two "status points," Defendant had a Category II criminal history. *Id.* Combined with his total offense level, the recommended guideline range was 121 to 151 months. *Id.* at ¶ 59. The Court ultimately sentenced Defendant to 151 months' imprisonment. Dkt. No. 195.

Since then, the Sentencing Commission amended several provisions of Sentencing Guidelines that retroactively lowers Defendant's recommended guideline range to 108 to 135 months. Accordingly, Defendant moved to reduce his sentence, which the Government opposes.

## AUTHORITY AND ANALYSIS

Generally, courts cannot modify a term of imprisonment once it has been imposed. *See Dillon v. United States*, 560 U.S. 817, 824 (2010); *see also* 18 U.S.C. § 3582(b). However, an exception to this rule exists under 18 U.S.C. § 3582(c)(2). This statute provides that:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 USC § 3582(c)(2). Defendant seeks a sentence reduction based on this provision.

Consideration of a motion for sentence reduction under § 3582(c)(2) involves a two-step inquiry. *Dillon*, 560 U.S. at 827. First, the court must "determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id.* Second, the court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction

authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* The Court will examine each step below.

**A. Defendant is eligible for a sentence reduction.**

The parties do not dispute that Defendant is eligible for a sentence reduction. Indeed, during Defendant's original sentencing, U.S.S.G. §4A1.1(d) directed courts to assign two additional criminal history "status points" to defendants who committed the offense while under a criminal justice sentence. Dkt. No. 54 at 10. The Sentencing Commission subsequently approved Amendment 821, effective November 1, 2023, which changed the calculation of criminal history scores under the guidelines. The Amendment removed the two-point increase under U.S.S.G. § 4A1.1(d) for committing an instant offense while under a criminal justice sentence. The Amendment also added a new subsection (e), which assesses one point if a defendant has seven or more criminal history points and "committed the instant offense while under any criminal justice sentence." U.S.S.G. § 4A1.1(e). The Amendment was made retroactive. *See id.* § 1B1.10(d). Accordingly, under that retroactive amendment, Defendant's criminal history category would be I instead of II, and his guideline sentencing range would be 108 to 135 months instead of 121 to 151 months. Thus, Defendant is eligible for a sentence reduction.

**B. The § 3553(a) factors disfavor a sentence reduction.**

The Government instead focuses on step two of this inquiry, which requires the Court to consider § 3553(a)'s sentencing factors to determine whether a sentence reduction is appropriate. *Dillon*, 560 U.S. at 827. The Government argues these factors weigh against a sentence reduction. Dkt. No. 69 at 7-9. For the following reasons, the Court agrees.

The nature and circumstances of the crime are particularly severe in this case. Indeed, Defendant pled guilty to anally raping his girlfriend ("Victim") on May 25, 2020, and vaginally

raping her on June 6, 2020. Dkt. No. 43 at 2-3; Dkt. No. 54 at ¶¶ 9-10. On the first occasion, Defendant raped the Victim while she was unconscious and could not physically consent to any sexual act. Dkt. No. 54 at ¶ 9. She then awoke in pain, and after presumably expressing her objection to Defendant's conduct, he responded that it was simply an accident that occurred while he was sleeping. *Id.* He then later apologized to the victim, acknowledged that it was *not* an accident, and stated that he simply thought she wanted to engage in sexual intercourse because she had moved closer to him while sleeping. *Id.*

Less than two weeks later, Defendant raped the Victim again while she was unconscious. *Id.* at ¶ 10. But this time, taking advantage of her unresponsiveness, Defendant recorded himself rubbing baby oil on her buttocks, slapping her buttocks, inserting his fingers and penis into her vagina, and performing oral sex on her. *Id.* at ¶ 14. Altogether, he recorded these acts for eleven minutes and thirty-five seconds. *Id.* She did not know the rape had occurred until he later sent her videos of the acts. *Id*. And when she expressed her outrage at being raped and filmed, Defendant responded through text: "Didn't mean too I was tryna record us having good sex like before. But would rather wait til ur fully ready to have a recorded session with 5 positions, sorry." *Id.* at ¶ 10. He also later told her, "Not didn't mean too like I thought you would be more into it." *Id.*

Defendant acknowledges that his conduct was "abhorrent." Dkt. No. 70 at 3. But he argues this case is outside the heartland of other sex abuse cases because he did not hit, threaten, or use any additional violence against her. *Id.* at 3-4. But the Victim was already unconscious, so there was no need to use violence or threats to accomplish the rapes. And, as the Government points out, Defendant *did* threaten her after she broke up with him. Indeed, after their breakup, the Victim agreed to meet with Defendant at a park, a conflict ensued, and Defendant accused her of "getting attention" from someone else and threatened to "knock her ass out." Dkt. No. 54 at ¶ 12. He also

told her he was involved in a prior shooting in Shawnee, Oklahoma, and that if she was going to be with someone else then "he got away with it once, he can get away with it again." *Id.* This statement referred to his 2019 conviction for accessory to murder, a conviction for which he was serving a five-year probationary sentence at the time of the rapes. *Id.* at ¶ 41.

Defendant has continuously exhibited violent characteristics, disrespected the law, and posed a great risk to the public. Indeed, Defendant raped the Victim twice while she was unconscious and showed little regard for her well-being afterwards. He filmed one of these rapes and then sent the recordings to the Victim. He also committed both rapes while serving on probation for accessory for first-degree murder, meaning that his previous conviction and probation failed to deter him from committing these rapes. Defendant also exploited his lighter sentence by telling the Victim that he could harm her or another and escape incarceration.

The Court therefore constructed a sentence that reflected the severity of his offenses, provided just punishment, deterred other criminals, provided correctional treatment, and accounted for the other § 3553(a) factors when it sentenced him to 151 months incarceration. That analysis has not changed. The only change is that the (retroactive) advisory range no longer accommodates the Court's application of these factors. So, for the reasons above, the Court would effectively vary upward, and Defendant's sentence will remain at 151 months of incarceration.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Amended Motion for Sentence Reduction is DENIED. Dkt. No. 66.

Dated this 23rd day of March 2026.

_____
JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE